■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT GOMEZ, Appellant. [596 NYS2d 439] —Appeal by the defendant from a judgment of the County Court, Westchester County (Silverman, J.), rendered October 27, 1989, convicting him of murder in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement authorities.

Ordered that the judgment is affirmed.

The defendant pleaded guilty to the 1982 murder of his brother, a crime which remained unsolved until the discovery of the defendant's brother's mutilated torso in 1989. The defendant was questioned by police and first inculpated himself when confronted with a photograph of his brother's torso.

There is no merit to the defendant's contention that his initial inculpatory statement should have been suppressed as the result of a custodial interrogation conducted without the benefit of *Miranda* warnings. To ascertain whether an interrogation is custodial or not, the relevant question to be asked is what a reasonable person, innocent of any crime, would have believed had that person been in the defendant's position *(see, People v Hicks,* 68 NY2d 234; *People v Yukl,* 25 NY2d 585, *cert denied* 400 US 851). In this case, clearly an innocent person responding to questions about the disappearance of a sibling would not believe that he or she was in custody. Nor would an innocent person believe otherwise when confronted with a photograph of a torso the police suspected could have been that of the missing sibling. A reasonable innocent person would believe that he or she was being asked to assist in the investigation of the sibling's disappearance and possible death. Significantly, prior to inculpating himself, the defendant spent only 40 to 55 minutes in the interrogation room *(see, People v Glasper,* 160 AD2d 723; *People v Croney,* 121 AD2d 558). During his interrogation, the defendant's freedom of movement was not restricted, and the atmosphere was not at all coercive. The questioning was ostensibly investigatory. Confronting the defendant with the photograph of the torso did not render his initial statements involuntary *(see, People v Tarsia,* 50 NY2d 1), nor did it instantaneously render the interrogation custodial. The defendant was free to leave prior to inculpating himself and was treated with respect and dignity. An innocent person in the defendant's position in this case simply would not have believed himself to be in custody.

Accordingly, the County Court properly refused to suppress the defendant's initial statement to the police.

As the People concede, the court erred in denying suppression as to the defendant's second inculpatory statement. Prior thereto, the investigating detective provided the defendant with his first reading of his constitutional rights from memory. The detective failed to advise the defendant that he had the right to have counsel present during the interrogation and thus, the statement elicited in reliance upon these incomplete *Miranda* warnings should have been suppressed *(see, People v Hutchinson,* 59 NY2d 923).

It does not follow, however, that the defendant's third statement, a full audiotaped confession, must also be suppressed. Following his second statement, the defendant was advised of his full constitutional rights. He signed a written *Miranda* waiver card. He was then readvised of his full rights on audiotape by an Assistant District Attorney prior to giving the audiotaped confession. Although there was not a significant break in the questioning between the second and the third statements, under the unique circumstances of this case we find that there was no taint *(cf., People v Bethea,* 67 NY2d 364). The defendant initially inculpated himself voluntarily in a noncustodial setting. Although he then offered a full confession following technically-defective *Miranda* warnings, his audiotaped confession followed administration of full warnings on two occasions, by different individuals. His audiotaped confession was clearly voluntary and not at all the result of the incomplete warnings which preceded the second statement. Unlike the situation presented in *People v Bethea (supra)* or *People v Chapple* (38 NY2d 112), in this case the third statement followed a fully voluntary noncustodial admission. A defendant who voluntarily confesses in a noncustodial setting should not be heard to complain that a subsequent confession following full *Miranda* warnings was tainted by an intervening confession that was elicited following technically deficient *Miranda* warnings *(cf., People v Ripic,* 182 AD2d 226). On this record, the voluntariness of the defendant's first and third statements was so apparent that the third statement need not be suppressed because of the insufficient warnings preceding his second statement *(cf., People v DiLucca,* 133 AD2d 779). Accordingly, we find that his audiotaped confession was properly ruled admissible.

Although the court erred in its suppression ruling as to the defendant's second statement, the factual tenor of this case is such that the defendant's plea of guilty need not be vacated. It

is clear from the defendant's first statement that he possessed an independent motivation to plead guilty *(see, People v Lloyd,* 66 NY2d 964). Moreover, even though the defendant's second statement should have been suppressed, the admissibility of his full audiotaped confession renders it highly unlikely that the defendant's decision to plead guilty would have been any different had the court suppressed the second statement.

We have reviewed the defendant's remaining contentions and find them to be without merit. Miller, J. P., Eiber, Copertino and Pizzuto, JJ., concur.